UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DONNE K. BOUMEKPOR, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:18-CV-30093-KAR |
| | ) | |
| | ) | |
| WAL-MART STORES EAST, LP, | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt No. 54)

ROBERTSON, U.S.M.J.

Donne K. Boumekpor ("Plaintiff") brings this action *pro se* against Wal-Mart Stores

East, LP ("Defendant") alleging race discrimination and worker's compensation retaliation.[1]

Presently before the court is Defendant's motion for summary judgment (Dkt. No. 54).  The

parties have consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73

(Dkt. No. 10).  For the following reasons, Defendant's motion for summary judgment is

GRANTED.

**I.     STANDARD OF REVIEW**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  "An issue is 'genuine' when a rational factfinder could resolve it either direction."  *Mu v.

Omni Hotels Mgmt. Corp.*, 882 F.3d 1, 5 (1st Cir.), *rev. denied*, 885 F.3d 52 (1st Cir. 2018)

---

[1] Plaintiff also brought a claim for disability discrimination, but this court previously dismissed it
for failure to exhaust administrative remedies (Dkt. No. 22).

(citing *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 4 (1st Cir. 2010)). "A fact is 'material' when its (non)existence could change a case's outcome. *Id*. (citing *Borges*, 605 F.3d at 5). The record is viewed in favor of the nonmoving party, and reasonable inferences are drawn in the nonmoving party's favor. *See Garcia-Garcia v. Costco Wholesale Corp.*, 878 F.3d 411, 417 (1st Cir. 2017) (citing *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015)).

Local Rule 56.1 requires a moving party to "include a concise statement of the material facts of record as to which the moving party contends there is no genuine issue to be tried" with citations to the record. L.R. 56.1. In response, the non-moving party must set out his own statement with citations to the record showing that "there exists a genuine issue to be tried." *Id*. Unless the non-moving party's statement controverts the moving party's statement, the moving party's facts are "admitted by [the] opposing part[y]." *Id*. *See also Aegis Sec. Ins. Co. v. M.E. Smith, Inc.*, 404 F. Supp. 3d 352, 353 (D. Mass. 2019) (citing *Fid. & Guar. Ins. Co. v. Boustris*, Civil Action No. 08–cv–11198–RGS, 2010 WL 4183879, at *3 (D. Mass. 2010) (deeming the movant's Local Rule 56.1 statement admitted where the opposing party failed to controvert it as required by the rule). This is true even where the non-moving party is proceeding *pro se*. *Torres v. Skil Corp.*, No. CIV.A. 11-11232-MBB, 2013 WL 3105815, at *2 (D. Mass. June 17, 2013) (applying the rule in a case brought by a *pro se* plaintiff).

## II.     FACTUAL BACKGROUND

Because Plaintiff failed to submit a separate statement of disputed facts pursuant to Local Rule 56.1, the court deems Defendant's Local Rule 56.1 statement admitted, and the following facts are derived therefrom.

On October 23, 2004, Defendant hired Plaintiff as a stock person at Store No. 5278 in Chicopee, Massachusetts (Dkt. No. 56 at ¶ 1). Three years later, Plaintiff became an Overnight Maintenance Associate (Dkt. No. 56 at ¶ 2). On October 5, 2013, Plaintiff was injured in an automobile accident while traveling from the Chicopee store to another Walmart store located in Northampton, Massachusetts (Dkt. No. 56 at ¶¶ 3-4). Following the accident, Plaintiff took a worker's compensation leave of absence until December 2013 (Dkt. No. 56 at ¶ 4). Plaintiff pursued legal action against the other driver in the accident, which was resolved by arbitration in July 2015 (Dkt. No. 56 at ¶ 5). On January 25, 2016, Plaintiff approached Store Manger Katrina Ward asking whether Walmart would further compensate him for the accident (Dkt. No. 56 at ¶ 6). Ward responded to Plaintiff on February 16, 2016, telling him "that Walmart had nothing to do with the accident and they would not get involved in any way" (Dkt. No. 56 at ¶ 6).

During the summer of 2016, Plaintiff was asked to clean the bathroom two nights in a row (Dkt. No. 56 at ¶ 9). When Plaintiff asked Co-Manager Mike Nichols why he got this assignment, Nichols explained to him that the team was short-handed – normally four to six Maintenance Associates were scheduled to work, but during that shift there were only three – and the Maintenance Associates had to make it through that shift as best they could (Dkt. No. 56 at ¶¶ 9-11).

In August and September 2016, Asset Protection Associate Hector Viruet became suspicious that Plaintiff was stealing (Dkt. No. 56 at ¶ 16). On several occasions, Viruet observed Plaintiff enter the Electronics Department to shop following his shift, select compact discs ("CDs"), and place them in the child seat of his grocery cart (Dkt. No. 56 at ¶¶ 13, 15). Plaintiff would then enter an area where cameras were not present and later emerge without the CDs (Dkt. No. 56 at ¶¶ 14-15). Pursuant to Walmart practice, Viruet reported the suspicious

conduct to Asset Protection Manager Sara Bernat (Dkt. No. 56 at ¶ 17).  Bernat, also pursuant to Walmart practice, asked Viruet to watch Plaintiff on September 4, 2016 using the store's pan/tilt/zoom ("PTZ") cameras, which allow users to adjust the camera view in real time (Dkt. No. 56 at ¶ 18).

On September 4, 2016, Plaintiff went shopping in the Chicopee Store, and Viruet directed a PTZ camera on him while he was shopping in one of the grocery aisles (Dkt. No. 56 at ¶¶ 19-20).  Viruet observed Plaintiff remove two cans of meat (or a similar product) off the shelf and place them in the child seat of a shopping cart on top of what appeared to be a stack of white papers (Dkt. No. 56 at ¶ 21-22, 25, 27).  Thereafter, Viruet observed Plaintiff place the cans into a backpack located immediately below the child seat (Dkt. No. 56 at ¶¶ 28, 32, 37).  When Plaintiff went to check out, he placed a bag of oranges and a bottle of juice on the checkout counter, for which he proceeded to pay (Dkt. No. 56 at ¶¶ 43-44).  Plaintiff did not remove anything from the backpack, and he exited the store without paying for the two cans of meat (Dkt. No. 56 at ¶¶ 45-46).  Bernat reviewed the video footage of Plaintiff that Viruet captured and concluded that Plaintiff had stolen from the store (Dkt. No. 56 at ¶ 47).

Two days later, on September 6, 2016, Bernat interviewed Plaintiff, who denied ever taking merchandise without paying for it (Dkt. No. 56 at ¶¶ 48-50).  Regarding September 4, 2016 in particular, Plaintiff claimed that he had returned the canned meat to the shelf (Dkt. No. 56 at ¶ 52).  Bernat suspended Plaintiff pending the results of an investigation in accordance with instruction from Asset Protection Manager Mike Geloso (Dkt. No. 56 at ¶¶ 54-55).  Bernat consulted Geloso regarding the findings of the investigation, and the decision was made to terminate Plaintiff's employment (Dkt. No. 56 at ¶ 56).  Neither Ward nor Nichols was involved in the decision to terminate Plaintiff (Dkt. No. 56 at ¶ 62).  On September 17, 2016, Bernat filed

a police report and sent a certified letter to Plaintiff notifying him of his termination effective September 19, 2016 (Dkt. No. 56 at ¶¶ 58, 60).  Bernat was unaware that Plaintiff had previously filed a workers' compensation claim (Dkt. No. 56 at ¶ 59).

Between March 2012 and August 2018, the employment of sixteen Associates working at the store at which Plaintiff worked was terminated for theft in some form (Dkt. No. 56 at ¶ 63). Of those sixteen, five were Caucasian, five Black, and six Hispanic (Dkt. No. 56 at ¶ 64).  Within this group, the employment of three Associates other than Plaintiff, all of whom were Caucasian, was terminated for stealing food (Dkt. No. 56 at ¶¶ 65-66).

## III.   DISCUSSION

### A.   Race Discrimination

Plaintiff claims that Defendant terminated his employment because of his race, which is unlawful under Title VII.  *See* 42 U.S.C.A. § 2000e-2 (providing that an employer may not "discharge any individual . . . because of such individual's race").  Because Plaintiff has no direct evidence of discrimination, the court applies the three-step framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), to Plaintiff's claim.  *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 113 (1st Cir. 2015) (citing *Udo v. Tomes,* 54 F.3d 9, 12 (1st Cir.1995)).  Under that framework, a plaintiff first must establish a prima facie case by showing that: "'(1) he is a member of a protected class; (2) he was qualified for the job; (3) the employer took an adverse employment action against him; and (4) the position remained open or was filled by a person with similar qualifications.'"  *Id*. (quoting *Cham v. Station Operators, Inc.,* 685 F.3d 87, 93 (1st Cir. 2012)).  If the plaintiff makes this initial showing, the court moves to the second step at which the burden of production shifts to the defendant to establish "a legitimate, nondiscriminatory justification for the adverse employment action."  *Id*. (citing *Cham*, 685 F.3d

at 94).  If the defendant meets its burden of production, the court moves to the third and final

step where "'the *McDonnell Douglas* framework "disappears" and the sole remaining issue is

"discrimination *vel non.*"'"  *Id.* (quoting *Cham*, 685 F.3d at 94).  "At step three, to avoid

summary judgment, [a plaintiff] must 'show by a preponderance of the evidence that [the

defendant's] proffered reason is pretextual and that the actual reason for the adverse employment

action is discriminatory.'"  *Theidon v. Harvard Univ.*, 948 F.3d 477, 496 (1st Cir. 2020) (quoting

*Johnson v. Univ. of P.R.*, 714 F.3d 48, 54 (1st Cir. 2013).  In other words, "[the plaintiff] 'must

offer "some minimally sufficient evidence, direct or indirect, both of pretext and of [the

defendant's] discriminatory animus."'"  *Id*. at 497 (quoting *Pearson v. Mass. Bay Transp. Auth.*,

723 F.3d 36, 40 (1st Cir. 2013) (emphasis in original)).

Defendant does not contest that Plaintiff can establish his prima facie case for purposes of

its motion for summary judgment.  Defendant advances Plaintiff's theft of two cans of meat from

the Chicopee store on September 4, 2016 as the legitimate, non-discriminatory justification for

the termination of Plaintiff's employment, and, thus, has met its burden at step two.  *See, e.g.,*

*Trent v. ADT Sec. Servs., Inc.*, No. CIV.A. 11-11912-RGS, 2013 WL 4512052, at *4 (D. Mass.

Aug. 22, 2013) (finding that theft by the plaintiff qualifies as a legitimate non-discriminatory

reason for the termination of plaintiff's employment).  Therefore, the burden shifts back to

Plaintiff to show both that Defendant's articulated reason is pretextual and that discrimination

was the real reason for the termination of his employment.

"'Pretext can be shown by such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that

a reasonable factfinder could rationally find them unworthy of credence and hence infer that the

employer did not act for the asserted non-discriminatory reasons.'"  *Gomez-Gonzalez v. Rural*

6

*Opportunities, Inc.*, 626 F.3d 654, 662–63 (1st Cir. 2010) (quoting *Morgan v. Hilti, Inc.,* 108

F.3d 1319, 1323 (10th Cir.1997)).  "[I]n assessing pretext, a court's focus must be on the

perception of the decisionmaker, that is, whether the employer believed its stated reason to be

credible."  *Theidon*, 948 F.3d at 497 (quoting *Vélez v. Thermo King de P.R., Inc.*, 585 F.3d 441,

452 (1st Cir. 2009)).  Plaintiff has not proffered any evidence to cast doubt on Defendant's stated

belief that Plaintiff stole two cans of meat from the Chicopee store.[2]  Plaintiff advances two

reasons for finding that his theft of the canned meat was a pretext for discrimination.  First,

Plaintiff points to Defendant's Asset Protection Case Record, which lists the items stolen as two

"PR W&W ICON PENCIL[s]," rather than two cans of meat.  The court is not convinced that

this discrepancy establishes pretext.  As an initial matter, the narrative section of the same

document describes Plaintiff being captured on PTZ selecting and concealing two cans of SPAM

meat, not two pencils.  In addition, Bernat explained in her affidavit that the identification of the

two pencils as the stolen items represented an error in the preparation of the report.  Second,

Plaintiff complains that Defendant made no attempt to apprehend him in the act and only

interviewed him two days later, on September 6, 2016.  However, Plaintiff did not work again

until September 6, 2016, so the fact that Defendant waited two days to interview him does not

support an inference of pretext.  Because Plaintiff did not present any countervailing evidence,

but rather, relies on unsupported speculation, he has not raised a genuine issue of material fact

with respect to pretext.  *See id.* at 496 ("'Nevertheless, "[e]ven in cases where elusive concepts

such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving

---

[2] Plaintiff complains that he was never shown the video evidence, but he has not put forth any evidence that it was false.  Defendant submitted the video evidence in support of its summary judgment motion and the court has viewed it.  The video evidence does not appear contrived.

party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.""") (quoting *Coll v. PB Diagnostic Sys., Inc.*, 50 F.3d 1115, 1121 (1st Cir. 1995)).

In addition, Plaintiff fails to create a genuine issue of material fact that the real reason for the termination of his employment was discriminatory.  "The same evidence used to show pretext can support a finding of discriminatory animus if it enables a factfinder 'reasonably to infer that unlawful discrimination was a determinative factor in the adverse employment action.'"  *Feliciano de la Cruz v. El Conquistador Resort & Country Club*, 218 F.3d 1, 6 (1st Cir. 2000) (quoting *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 56 (1st Cir.1999), *cert. denied*, 528 U.S. 1161 (2000)).  Plaintiff's arguments regarding the identification of the items stolen as two pencils in the Asset Protection Case Record and the delay in interviewing him fail to create a genuine issue of material fact regarding discrimination for the same reason they fail to create such an issue as to pretext.

Another way for a plaintiff to demonstrate discriminatory animus is to show that "'others similarly situated to him in all relevant respects were treated differently by the employer.'"  *Ray*, 799 F.3d at 114 (quoting *Kosereis v. R. I.,* 331 F.3d 207, 214 (1st Cir.2003)).  Plaintiff argues that he was treated differently in that he was asked to clean bathrooms by Co-Manager Mike Nichols two days in a row.  However, as Nichols explained to Plaintiff, the team was short-handed, and the Maintenance Associates had to make it through the shift as best they could. Plaintiff has not introduced any evidence that his race played any role in Nichols' treatment of him.  Moreover, Plaintiff has not pointed to any evidence that Nichols played a role in the decision to terminate Plaintiff's employment.  Plaintiff also argues that he was subjected to enhanced video surveillance in that, in addition to September 4, 2016, he was under surveillance on August 20, 24, 28, and 31, and September 2 and 3, 2016.  Defendant's decision to monitor

Plaintiff's behavior is explained by Viruet's suspicion, formed in August and September 2016, that Plaintiff was stealing based on Plaintiff's suspicious behavior involving the CDs. Plaintiff has not shown that his race was a factor in Defendant's decision to initiate targeted video surveillance of him.

"[Plaintiff's] 'subjective belief of discrimination is not sufficient to withstand summary judgment.'" *Henderson v. Mass. Bay Transp. Auth.*, 384 F. Supp. 3d 199, 207 (D. Mass. 2019) (quoting *Tyree v. Foxx*, 835 F.3d 35, 42 (1st Cir. 2016)). Plaintiff's case ultimately founders because it is supported only by speculation, and Defendant is entitled to summary judgment on Plaintiff's race discrimination claim.

B. Workers' Compensation Retaliation

Plaintiff also claims that Defendant terminated his employment in retaliation for his pursuing a workers' compensation claim related to his October 2013 car accident. Massachusetts General Laws ch. 152, § 75B(2) makes it unlawful for an employer to "discharge, refuse to hire or in any other manner discriminate against an employee because the employee has exercised a right afforded by [the Workers' Compensation Act], or who has testified or in any manner cooperated with an inquiry or proceeding pursuant to this [Act], unless the employee knowingly participated in a fraudulent proceeding." To make out a prima facie case of retaliation, "an employee must demonstrate that (1) the employee engaged in an activity protected by the Act; (2) the employer was aware of the protected activity; (3) the employer thereafter engaged in an adverse employment action; and (4) but for the employee's engagement in the protected activity, the employer would not have taken the adverse employment action against the employee." *Gauthier v. Sunhealth Specialty Servs., Inc.*, 555 F. Supp. 2d 227, 245 (D. Mass. 2008) (citing *Benoit v. Tech. Mfg. Corp.*, 331 F.3d 166, 177 n.5 (1st Cir.2003)). Defendant argues that

Plaintiff cannot meet the second or fourth element – that the employer was aware of the protected activity or that there was a causal, but-for link between the protected activity and the termination of his employment.

Defendant's argument regarding the knowledge element is premised on the notion that the plaintiff "must show that the retaliator knew about [his] protected activity – after all, one cannot have been motivated to retaliate by something he was unaware of." *Medina-Rivera v. MVM, Inc.*, 713 F.3d 132, 139 (1st Cir. 2013) (citing *Lewis v. Gillette, Co.,* 22 F.3d 22, 24–25 (1st Cir.1994)). According to Defendant, it is indisputable that Bernat had no knowledge that Plaintiff sought workers' compensation benefits in 2013. Indeed, Bernat avers that she was unaware prior to this litigation that Plaintiff had filed a workers' compensation claim at any point during his employment with Defendant. The problem with Defendant's argument is that the summary judgment record does not establish that Bernat was the decisionmaker. Bernat's affidavit simply states, "I consulted with Geloso regarding the findings of the investigation, and the decision was made to terminate Boumekpor's employment." She does not identify herself as the decisionmaker, leaving open the possibility that it was Geloso or someone else at Walmart who decided to terminate Plaintiff's employment and the decisionmaker(s) might have had knowledge of Plaintiff's workers' compensation claim.

Nevertheless, Defendant is correct that Plaintiff's claim fails on the element of causation. Plaintiff can establish this element of his prima facie case through direct or circumstantial evidence, *DeCaire v. Mukasey*, 530 F.3d 1, 19 (1st Cir. 2008), *as corrected* (July 10, 2008) (citing *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 335 (1st Cir. 2005)), and, in particular, "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" *Id.* (citing *Mariani–Colon v. Dep't of Homeland*

*Sec. ex rel. Chertoff,* 511 F.3d 216, 224 (1st Cir. 2007)).  However, "'[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close."'"  *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (quoting *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74 (2001)).  A three-year gap, quite simply, is too long to raise an inference of retaliation.  *See, e.g., Quattrucci v. Mass. Gen. Hosp.*, No. CV 17-11250-GAO, 2020 WL 1323111, at *2 (D. Mass. Mar. 20, 2020) (holding that a five- or six-month gap is too attenuated to meet the plausibility standard) (citing *Calero-Cerezo*, 355 F.3d at 25 (noting that "[t]hree and four month periods have been held insufficient to establish a causal connection based on temporal proximity")).  Other than the undisputed fact of his absence from October through December 2013 for a work-related injury, Plaintiff has pointed to no evidence, direct or circumstantial, that Defendant might have engaged in retaliation when it terminated Plaintiff's employment in September 2016.   Thus, Defendant is entitled to summary judgment on Plaintiff's workers' compensation retaliation claim.

## IV.   CONCLUSION

For the above-stated reasons, Defendant's motion for summary judgment (Dkt. No. 54) is GRANTED.

It is so ordered.

/s/ Katherine A. Robertson_____
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  August 7, 2020

11